OPINION OF THE COURT
Guy P. De Phillips, J.
In this Family Court Act article 8 family offense proceeding, petitioner spouse filed a supplemental petition dated March 15, 1994, alleging that respondent failed to obey the modified order of protection issued by this court dated November 15, 1993. This supplemental petition alleged that respondent on March 8, 1994, upon release from incarceration for prior violation of the order of protection, arrived at petitioner’s *23 residence with police at approximately 1:00 a.m. attempting to gain entry to petitioner’s residence and subsequently on March 11, 1994, that "a car belonging to a friend was towed from petitioner’s driveway, and petitioner thinking the car stolen filed a police report and later learned where the car was towed, and upon inquiring found respondent had filed a complaint and stated to be the owner of the property and claimed that the car was illegally parked and have the car towed * * * the towing company is demanding payment for towing and storage fees.”[1]
*24 A warrant was issued for respondent’s arrest. Respondent was returned on the warrant on March 21, 1994, and issue joined. The hearing was held on April 5 and 6, 1994. At the conclusion of the hearing the court made two findings beyond a reasonable doubt, to wit, (1) that on March 8, 1994, respondent willfully violated the final order of protection by attempting to gain entry to petitioner’s residence and (2) that on March 11, 1994, respondent willfully violated the final order of protection by having a vehicle lawfully parked on petitioner’s property towed from that property with false representations by respondent that he was the owner of the property, that the car was unlawfully parked, all to harass and annoy the petitioner.
At the dispositional phase of this supplemental proceeding brought pursuant to Family Court Act § 846, the court based on the prior history of family offense activity perpetrated upon petitioner by respondent; the fact that respondent had been committed previously by a court in Nassau County to incarceration for 180 days; that respondent apart from that commitment, had been civilly committed by this court for willful violation of the order of protection to incarceration for six months; that respondent upon release from this most recent commitment had almost simultaneously violated the order of protection again on March 8, 1994; that respondent’s behavior indicated an intractable design to continue to annoy and harass petitioner; and considering the welfare not only of petitioner, but of the two children, the court determined to civilly commit the respondent for each of the two willful violations to a term of incarceration of six months for the finding of violation occurring on March 8, 1994 and of four months for the finding of violation occurring on March 11, 1994, to run consecutively.
Respondent on April 12, 1994 filed a motion returnable April 27, 1994 seeking reargument of the dispositional order dated April 7, 1994. In his motion respondent relies on recent appellate authority, to wit, Matter of Vitti v Vitti (202 AD2d 917 [3d Dept 1994]), which holds that Family Court Act article 8 does not authorize imposition of consecutive commitments. The Third Department stated that in its view this statute, on *25 its face, prohibits such commitments. As there is no other reported appellate decision on this issue, this holding would normally be of persuasive authority. This holding is remarkable and has significant and broad impact on the public especially that element of the public at risk of domestic (family) violence. Because of this overriding public concern, the holding must be scrutinized. In Vitti, the Family Court of Dutchess County (Marlow, J.) made two findings of violation of final order of protection issued to the wife and children against the husband. The fact findings, undisturbed on the appeal, are that the respondent husband violated the order of protection issued November 7, 1991 in that he made a series of over 300 harassing phone calls commencing on or about December 18, 1991 until the date of the petition, January 22, 1992, and that on March 25, 1992 he appeared at petitioner’s residence. At the dispositional hearing, respondent was civilly committed to two consecutive six-month jail terms for the two findings of willful violation of the order of protection. The appellate court declared "Finally, we agree with respondent that the sentence imposed here was illegal. Family Court Act § 846-a provides, in relevant part, that '[i]f a respondent is brought before the court for failure to obey any lawful order issued under [Family Court Act article 8] and if, after hearing, the court is satisfied by competent proof that the respondent has willfully failed to obey any such order, the court may * * * commit the respondent to jail for a term not to exceed six months.’ Petitioner has failed to point to any provision in Family Court Act article 8 that would authorize imposition of consecutive sentences, and in our view Family Court Act § 846-a, on its face, prohibits such sentences” (emphasis supplied). (Supra, at 920.)
This holding in a practical sense constitutes a judicial fiat that regardless of the number of separate willful violations committed by a respondent under an extant order of protection, the respondent risks civil commitment under Family Court auspices for only up to six months. The potential absurdity may be illustrated in numerous ways. For example, a respondent having been found guilty beyond a reasonable doubt of willfully violating an order of protection may be civilly committed for six months, but the commitment may be suspended on condition the respondent not further violate the order of protection. Upon leaving the courthouse, the respondent hits the petitioner. Respondent returns before the court on this violation upon a new supplemental petition within a *26 day or two of the prior order of commitment. Petitioner has elected to proceed before the Family Court. Having been found guilty of this new violation beyond a reasonable doubt, the court imposes a further six-month term of civil commitment, lifts the suspension on the prior commitment and directs they run consecutively. Respondent presents the appellate holding in Vitti (supra) and educates the Family Court Judge in powerlessness to impose consecutive civil commitments which will exceed a six-month total. Respondent and the court acknowledge to petitioner that respondent got a "free shot”. Another scenario: respondent assaults petitioner in violation of an order of protection. Petitioner files a supplemental petition in Family Court alleging such violation. A summons is issued for respondent. Respondent is served. Before the return date, respondent assaults petitioner again. Another supplemental petition is filed or possibly petitioner amends the supplemental petition to allege this new assault. A warrant issues for respondent’s arrest. Respondent prior to execution of the warrant hits petitioner a third time. Petitioner elects to bring respondent before the Family Court for all three violations. Because of the history of violence, the intransigence of respondent and petitioner’s refusal to proceed criminally against respondent, the court determines to impose three terms of civil commitment to run consecutively. Respondent educates the petitioner and the court on its powerlessness by citing the Third Department holding in Vitti. To state the obvious: if the appellate holding in Vitti is a correct proposition of law, Family Court’s ability to extend safeguards and protection under article 8 in the arena of domestic violence is seriously compromised.
Study of the legislative history underlying article 8 and the plain language of the statute as well as the public policy imbued therein prompts the conclusion that the appellate court in Vitti (supra) engaged in judicial legislation. Accordingly, this court respectfully urges that it is not bound by such holding. As Family Court Act § 846 entitled "Petition; violation of court order” is a specific grant of authority to Family Court providing a civil remedy for violation of a Family Court order of disposition in the form of an article 8 order of protection, the supplemental proceeding to enforce the order of protection is not embraced within the traditional contempt powers of the Family Court (Family Ct Act § 156). Family Court Act § 846 states in pertinent part that petitioner who has obtained a lawful order of protection of Family Court may *27 petition Family Court for enforcement of that order "requiring the respondent to show cause why respondent should not be dealt with in accordance with section eight hundred forty-six-a of this part” (Family Ct Act § 846 [b]). Section 156 authorizes Family Court to apply Judiciary Law civil and criminal contempt sanctions "unless a specific punishment or other remedy for such violation is provided in this act or any other law” (Family Ct Act § 156). This provision "is meant to reflect the original intent to prohibit the Court from considering as a contempt a violation of an order of disposition.” (Besharov, Practice Commentary, McKinney’s Cons Laws of NY, Book 29A, Family Ct Act § 156, at 98.) Accordingly, the contempt envisioned under Family Court Act § 846 which is embraced in "a finding that the respondent wilfully failed to obey the order” and which "may result in commitment to jail for a term not to exceed six months” is a power distinct from traditional civil and criminal contempt as envisioned under and embraced by the Judiciary Law.
Family Court Act §§ 846 (added L 1980, ch 530, § 10) and 846-a were enacted to "establish a formal procedure (and specific remedies) for the willful violation of a lawful court order” (Besharov, Practice Commentary, McKinney’s Cons Laws of NY, Book 29A, Family Ct Act § 846, at 202). The legislative history of section 846 discloses that it came into being as part of an act to amend the Family Court Act, the Domestic Relations Law, the Judiciary Law, the Criminal Procedure Law and the Penal Law, in relation to family offenses and to repeal certain provisions of the Family Court Act relating thereto. The Bill Jacket and preamble show that the Legislature was aware that the activity embraced within a family offense could occur on one occasion (family offense) or be displayed on separate, distinct and repeated occasions (family offenses). The Executive Memorandum filed with the Assembly and Senate bills clearly shows an intent "to clarify and expand provisions for preliminary relief and enforcement of orders of protection” and recognized that "[violence in the home is as serious a breach of public order and safety as violence in the streets. Family violence is learned by children who take the violent response into the schools and streets, and later transmit it to their children. Strengthening of legal sanctions against violence in the home is a step toward stopping it in individual cases.” (Governor’s Mem, 1980 McKinney’s Session Laws of NY, at 1877-1878.) Documentation supporting the bills noted the following: authority is granted *28 to Family Court to entertain petitions for violations of protective orders and complainant is given the option of which court to proceed in, either Family or Criminal Court (New York State Department of Health, Office of Public Health); the enactment "clarifies and expands upon existing provisions of law regarding relief and enforcement procedures for victims of family offenses and domestic violence” and "would result in a general improvement in the ability of such victims to obtain protection from further family violence” (Mem of NY St Dept of Social Servs, Bill Jacket, L 1980, ch 530 [emphasis supplied]); the "major thrust of this bill is to indicate a process for enforcement of orders of protection in family offense proceedings issued by a family or a criminal court” (Mem of Off of Ct Admin, Bill Jacket, L 1980, ch 530); "[t]he bill will also make it easier for victims of domestic violence to file petitions for orders of protection, and to have them enforced” (Mem of NY St Counsel on Children and Families, Bill Jacket, L 1980, ch 530 [emphasis supplied]).
The State Legislature in liberalizing the statutes to effect greater protection to the victims of domestic violence by enactment of chapter 350 of the Laws of 1980 is deemed cognizant that Family Court is a nonjury institution wherein the court sits as both finder of fact and of law. At the time of this statutory enactment, Family Court Act § 847 provided and still provides: "An assault, attempted assault or other family offense as described in section eight hundred twelve of this article which occurs subsequent to the issuance of an order of protection under this article shall be deemed a new offense for which the petitioner may elect to file a violation of order of protection petition, or a new petition or initiate a proceeding in a criminal court.” This election is with the petitioner and not with the court whether at trial or appellate level. As noted by Besharov: "This section gives to the petitioner a choice of remedies for a family offense committed after the issuance of an order of protection. The most important option it gives the petitioner is, of course, the right to reconsider the original election of a civil remedy and to initiate a criminal prosecution” (Practice Commentary, McKinney’s Cons Laws of NY, Book 29A, Family Ct Act § 847, at 207). Accordingly it is clear that the Legislature has created a sui generis civil remedy for violation of a Family Court order of protection in Family Court, to wit, a supplemental petition alleging such violation or violations, if more than one, under Family Court Act §§ 846, 846-a and 847. The authority specifi *29 cally granted by the Legislature to Family Court under section 846-a reflects a spectrum of powers much broader than that embraced within civil or criminal contempt as envisioned by the Judiciary Law. This is a unique grant of power and, as already elucidated above, is intended to bolster, not defeat nor impair, enforcement of orders of protection.[2]
Against this background, the Third Department in Vitti *30 (supra), reads into article 8 a nonexistent provision, to wit, a proscription of consecutive periods of civil commitment exceeding a total period of six months regardless of the multiple findings of violation of the final order of protection then before the court for dispositional purposes. The appellate court declares this proscription is on the face of section 846-a. Family Court Act § 846-a states: "If a respondent is brought before the court for failure to obey any lawful order issued under this article and if, after hearing, the court is satisfied by competent proof that the respondent has wilfully failed to obey any such order, the court may modify an existing order to add reasonable conditions of behavior to the existing order of protection, make a new order of protection in accordance with section eight hundred forty-two, and commit the respondent to jail for a term not to exceed six months. Such commitment may be served upon certain specified days or parts of days as the court may direct, and the court may, at any time within the term of such sentence, revoke such suspension and commit the respondent for the remainder of the original sentence, or suspend the remainder of the sentence” (emphasis supplied). The civil commitment for a failure to obey the lawful order of protection may be up to six months. The utilization of the term "failure” in the singular in section 846-a and the term "a finding that the respondent willfully failed to obey the order” in the singular in section 846 implicates the plural (General Construction Law § 35; McKinney’s Cons Laws of NY, Book 1, Statutes § 252). Patently the Legislature in its article 8 enactments was and is cognizant that a respondent may commit multiple violations of an order of protection. The plain reading of section 846-a discloses that for each separate finding of violation, for each separate failure to obey the order of protection, a guilty respondent may be *31 committed to jail for a term not to exceed six months. The statute does not mandate that commitments be concurrent. Yet this is precisely the import of the holding by the appellate court in Vitti (supra). By such declaration it would be unlawful for Family Court to impose, for example, consecutive commitments of one week each. The only explanation for this tortuous conclusion is that the appellate court imposed a construction on the statute that consecutive terms may not exceed six months in total, albeit this is not what they specifically declared.
Since the plain and commonsense meaning of sections 846 and 846-a is that a respondent who commits separate and distinct violations, not incidental to a single transaction or event, is subject to civil commitment for up to six months on each violation, the grant of such authority implicitly invokes the power to make such commitments run concurrently or consecutively where appropriate. Guidance as to when such civil commitments should run consecutively or concurrently may be obtained from an examination of Penal Law § 70.25 entitled "Concurrent and consecutive terms of imprisonment.” Since the Family Court Act is silent as to strictures or tenets in this regard, the teachings under the analogue of criminal contempt (a crime) as delineated in the Penal Law are instructive. Study of these teachings discloses that under circumstances where the violations arose out of a single act or transaction, the commitments should be concurrent, but where the violations arose out of separate and distinct acts, consecutive commitments may be properly imposed (see, Donnino, Practice Commentaries, McKinney’s Cons Laws of NY, Book 39, Penal Law § 70.25, at 307; Notes of Decisions, op. cit.).
Respondent’s argument that Family Court has no power to impose two consecutive commitments of six months and four months each is not sustainable if predicated on the ground that the Family Court has no power to impose consecutive commitments regardless of the terms of such commitments. Rather, respondent’s argument is viewed as articulate in the sense of urging that violation of a civil order of protection is criminal, not civil, contempt and imposition of consecutive commitments in excess of a total period of six months invokes his right to jury trial (see, Codispoti v Pennsylvania, 418 US 506 [1974]). The US Constitution 6th Amendment provides, inter alia, that the accused in all criminal prosecutions shall enjoy the right to trial by an impartial jury. It appears that *32 the United States Supreme Court views supplemental proceedings alleging violation of a civil order of protection as a species of criminal contempt. (United States v Dixon, 509 US —, 113 S Ct 2849, 125 L Ed 2d 556 [1993]; see, Hicks v Feiock, 485 US 624 [1988]; Mine Workers v Bagwell, 512 US —, 129 L Ed 2d 642 [1994].) In Duncan v Louisiana, the United States Supreme Court held that the Sixth Amendment of the US Constitution as applied to the States through the Fourteenth Amendment of the US Constitution requires that one accused of serious crime be offered the right to trial by jury (391 US 145 [1968]). In Baldwin v New York, the United States Supreme Court ruled that a potential sentence for a criminal offense in excess of six months’ imprisonment for that offense is sufficiently severe by itself to take such criminal offense out of the category of "petty” as respects the right to a jury trial. Accordingly, the Supreme Court held that the possibility of imprisonment for one-year sentence following conviction before the New York City Criminal Court of jostling was, of itself, sufficient to require that the defendant be afforded the opportunity for a jury trial (399 US 66 [1970]).
In Family Court, a court of limited jurisdiction, the court sits as both finder of fact and law. The court has no power to impanel a jury. The Legislature in enacting article 8 — family offense proceedings — established a civil proceeding designed to protect family members from domestic violence, a major social problem. In authorizing Family Court to extend this protection, the Legislature apprehended that jury trials are not institutionalized within Family Court. Justice Scalia in United States v Dixon (supra) correctly observed the uniqueness of such grant of power.[3] To reiterate, the issue raised on this *33 motion is not excessiveness of commitment, but whether Family Court has the power to impose consecutive civil commitments for distinct separate acts of willful violations of a civil final order of protection, even though the cumulative term of those consecutive commitments exceeds six months. Recognizing the major social problem of domestic violence and the legislative response to this problem, Family Court would be remiss if it did not utilize the authority granted in that response in an appropriate fashion to protect the family and its individual members as warranted. Codispoti v Pennsylvania (supra) articulates the proposition that the court’s criminal contempts power in the area of the orderly administration of judicial proceedings, a power recognized at common law, mandates that if the court awaits the end of the trial to try the contempts occurring in the context of that trial rather than acting summarily to punish each contemptuous act by a defendant as it occurs, defendant must be afforded the opportunity of a jury trial. The circumstances herein are quite different and embrace a specific grant of power to a civil (noncriminal) court to enjoin violation of criminal law as specifically enumerated in a civil final order of protection. For violation of such court order an election is given, not to the State, not to the court, not to the respondent (the alleged perpetrator of the violation), but solely to the petitioner (the alleged victim of the violation) as to which remedy to invoke *34 (Family Ct Act § 847). This right of election which is vouchsafed the petitioner by legislative will cannot be revoked or rendered illusory by judicial fiat unless permeated by an aspect of unconstitutionality. Clearly the two individual con-tempts committed by the respondent herein were separate offenses for Sixth Amendment purposes. As such, they do not transgress or invoke jury trial relief. To hold otherwise, under these circumstances, does a vast disservice to the Legislature’s efforts to cope with domestic violence. Moreover it has grave implications for the victims of that violence. Judicial will educated by legislative sanctions and the social good must enforce a bright line where repeated violations of the order of protection are the norm and not the exception. There is after all, a difference between civil commitment for criminal contempt and a criminal sentence for the crime of criminal contempt.
Accordingly, the court denies respondent’s motion seeking reargument of the dispositional order dated April 7, 1994, concluding that under the circumstances herein the court does have the authority to issue consecutive civil commitments for willful distinct and separate violations of the order of protection, albeit the total term of such consecutive commitments exceeds six months.[4]

. The background of this supplemental proceeding is as follows: on January 15, 1993, on consent, petitioner wife obtained a final order of protection for one year directing that respondent shall not assault, menace, harass or recklessly endanger petitioner and the children and shall stay away from petitioner’s home. A supplemental petition was filed February 8, 1993, alleging violation in that, inter alla, respondent entered petitioner’s home on February 6, 1993. On February 9, 1993, the parties appeared and counsel were appointed to petitioner and respondent. A short evaluation of respondent was conducted by the Mental Health Services. It was reported that respondent possibly suffered from a posttraumatic stress disorder and was experiencing severe depression and anxiety and had a history of two prior psychiatric hospitalizations. The court remanded respondent to Elmhurst General Hospital for a full evaluation with a direction that respondent be released to court only. On February 10, 1993, respondent was produced together with a letter from Elmhurst General Hospital subscribed by Dr. Laurence Schiff, M.D. psychiatry, dated February 10, 1993 certifying that respondent was evaluated and found not to suffer from "any major mental illness, and does not present any acute evidence of homicidality or suicidality at this time.” Respondent was released to his own recognizance.
Subsequently the court was advised that petitioner had proceeded in Criminal Court, Nassau County, and that respondent was sentenced to 180 days’ incarceration. Accordingly the supplemental petition dated February 8, 1993 was dismissed. On November 8, 1993, petitioner filed a second supplemental petition alleging that respondent on October 25, 1993, shortly after his release from incarceration, threatened to kill petitioner, that "on November 1, 1993, respondent climbed into petitioner’s window from the fire escape, but when petitioner’s 15-year-old son saw respondent entering the residence did chase respondent out of the residence with a cooking fork” and that "on November 3, 1993 at approximately 11:30 a.m respondent followed petitioner when she dropped the child off at the child’s day care, and attempted to chase petitioner and when she called police respondent fled.” It is noted that the parties’ two children David then age 15 and Melissa then age 2 were covered by the order of protection. On November 15, 1993 after a hearing this court found beyond a reasonable doubt that respondent had violated the final order of protection as alleged. At that hearing the parties’ oldest child testified against the father. Based on the number of violations, their increasing severity, and mindful that respondent had already served a period of incarceration, in disposition of this supplemental petition, the court civilly committed the respondent for six months and in addition modified the final order of protection to continue for one *24 year, effective November 15, 1993, with the further directions that respondent not interfere with petitioner’s custody of the children, remain away from petitioner and the children at all times, and not file or be the source of false allegations of neglect or abuse against the petitioner. Subsequently petitioner filed the third supplemental petition dated March 15,1994.

. Recently the Legislature approved and the Governor signed a bill on June 30, 1994 (L 1994, ch 222, S 8642, A 11992) entitled "the family protection and domestic violence intervention act of 1994”. The majority of the provisions of this act take effect January 1, 1995. Section 1 entitled "Legislative findings” states:
"The legislature hereby finds and declares that there are few more prevalent or more serious problems confronting the families and households of New York than domestic violence. It is a crime which destroys the household as a place of safety, sanctuary, freedom and nurturing for all household members. We also know that this violence results in tremendous costs to our social services, legal, medical and criminal justice systems, as they are all confronted with its tragic aftermath.
"Domestic violence affects people from every race, religion, ethnic, educational and socio-economic group. It is the single major cause of injury to women. More women are hurt from being beaten than are injured in auto accidents, muggings and rapes combined.
"The corrosive effect of domestic violence is far reaching. The batterer’s violence injures children both directly and indirectly. Abuse of a parent is detrimental to children whether or not they are physically abused themselves. Children who witness domestic violence are more likely to experience delayed development, feelings of fear, depression and helplessness and are more likely to become batterers themselves.
"No age group is immune from domestic violence. Too many of New York’s elderly residents have become the victims of their own family or household members, leaving these senior citizens without hope or meaningful legal redress.
"A great deal of progress has been achieved in the effort to heighten public awareness about domestic violence and to provide services for affected family members. Dedicated individuals, shelter programs and advocacy organizations have been working successfully for years in order to provide refuge, counseling, legal relief and protection to victims of family violence. These efforts have also played a key role in bringing this issue into the open by helping individuals to survive domestic violence and work toward its prevention.
"Fortunately, with this heightened awareness has come a considerable shift in the public understanding of, and perspective on, domestic violence. In recent years, for example, what was once largely considered a private matter has come to be more correctly regarded as criminal behavior.
"The legislature further finds and declares that domestic violence is criminal conduct occurring between members of the same family or household which warrants stronger intervention than is presently authorized under New York’s laws. The integrity of New York’s families from its youngest to its oldest members is undermined by a permissive or casual attitude towards violence between household members. The legislature *30 further finds and declares that in circumstances where domestic violence continues in violation of lawful court orders, action under the criminal law must remain in place as a necessary and available option. Notwithstanding the evolution of the law of domestic violence in New York, death and serious injury by and between family members continues unabated. The victims of family offenses must be entitled to the fullest protections of our civil and criminal laws.
"Therefore, the legislature finds and determines that it is necessary to strengthen materially New York’s statutes by providing for immediate deterrent action by law enforcement officials and members of the judiciary, by increasing penalties for acts of violence within the household, and by integrating the purposes of the family and criminal laws to assure clear and certain standards of protection for New York’s families consistent with the interests of fairness and substantial justice” (emphasis supplied).

. Justice Scalia states:
"To place these cases in context, one must understand that they are the consequence of an historically anomalous use of the contempt power. In both Dixon and Foster, a court issued an order directing a particular individual not to commit criminal offenses (In Dixon’s case, the court incorporated the entire criminal code, in Foster’s case, the criminal offense of simple assault.) That could not have occurred at common law, or in the 19th-century American judicial system.
"At common law, the criminal contempt power was confined to sanctions for conduct that interfered with the orderly administration of judicial proceedings. 4 W. Blackstone, Commentaries* 280-*285. That limitation was closely followed in American courts. See United States v. Hudson and Goodwin, 7 Cranch. 32, 34 * * * (1812); R. Goldfarb, The Contempt Power 12-20 (1963). Federal courts had power to 'enforce the observance of order,’ but those 'implied powers’ could not support common-law jurisdiction over *33 criminal acts. Hudson and Goodwin, supra, at 34. In 1831, Congress amended the Judiciary Act of 1789, allowing federal courts the summary contempt power to punish generally 'disobedience or resistance’ to court orders. § 1, Act of March 2, 1831, 4 Stat. 487-488. See Bloom v. Illinois, 391 U.S. 194, 202-204 * * * (1968) (discussing evolution of federal courts’ statutory contempt power).
"The 1831 amendment of the Judiciary Act still would not have given rise to orders of the sort at issue here, however, since there was a long common-law tradition against judicial orders prohibiting violation of the law. Injunctions, for example, would not issue to forbid infringement of criminal or civil laws, in the absence of some separate injury to private interest. See, e.g., 3 Blackstone, supra, at Ò426, n. 1; J. High, Law of Injunction § 23, pp. 15-17, and notes (1873) (citing English cases); C. Beach, Law of Injunctions §§ 58-59, pp. 71-73 (1895) (same). The interest protected by the criminal or civil prohibition was to be vindicated at law — and though equity might enjoin harmful acts that happen to violate civil or criminal law, it would not enjoin violation of civil or criminal law as such. See, e.g., Sparhawk v. The Union Passenger R. Co., 54 Pa.St. 401, 422-424 (1867) (refusing to enjoin railroad’s violation of Sunday closing law); Attorney General v. The Utica Insurance Co., 2 Johns. Ch. 371, 378 (N.Y. 1817) (refusing to enjoin the violation of banking statute).” (United States v Dixon, 509 US —, —, 113 S Ct 2849, 2855 [1993], supra.)

. It is noted that in United States v Dixon, (509 US —, 113 S Ct 2849 [1993], supra), Foster was found guilty beyond a reasonable doubt of four counts of criminal contempt (three violations of Ana Foster’s civil protection order, and one violation of her mother’s civil protection order) and was imprisoned for an aggregate 600 days (some 20 months) after a three-day bench civil trial (see, DC Code Ann § 16-1005 [f] [authorizing contempt punishment]; Sup Ct of DC Intrafamily Rules 7 [c]; 12 [e] [maximum punishment of six months’ imprisonment and $300 fine]). This did not perturb the Supreme Court despite its holding in Codispoti (supra) some nine years earlier.
DC Intrafamily Rule 7 "motions” governing intrafamily proceedings provides in subdivision (c) for a motion for contempt for violation of protection order. Rule 12 "contempt” as to motions for contempt for violation of a civil protection order states:
"(b) Violation of protection order. A motion alleging one or more violations of a temporary order or civil protection order shall be filed and served pursuant to Rule 7 (c).
"(c) Contempt hearing procedures.
"(1) The respondent has the right to counsel and shall be so advised.
"(2) Anytime the judge contemplates imposing a sentence of imprisonment if the contempt is proven beyond a reasonable doubt, the judge may appoint counsel for the respondent. The Court may also request that the Corporation Counsel represent the petitioner.
*35 "(3) If the respondent requests a continuance the judge may grant the continuance on any one or all of the following conditions:
"(A) That any existing temporary protection order or civil protection order be extended,
"(B) That additional conditions to ensure the safety of the moving party be imposed (e.g., vacation of the premises pending the continuance; a temporary total ban on visitation; awarding temporary custody of a minor child of the parties),
"(C) That the respondent receive no further continuances.
"(4) Both parties have the right to present sworn testimony of witnesses and other evidence in support of or in opposition to the motion. The respondent may not be compelled to testify or give evidence.
"(d) Application of the spousal privilege. One spouse is a competent and compellable witness against the other and may testify as to confidential communications, but testimony compelled over a claim of privilege shall be inadmissible as evidence in a criminal trial over the objection of a spouse entitled to claim that privilege.
"(e) Punishment upon finding of contempt by the Division. Contempt may be punished by a fine or penalty of not more that $300.00 or by imprisonment for not more than six (6) months, or both.” (Emphasis supplied.)